MEDINA, PLAINTIFF AND APPELLANT, *v*. HEIRS OF BIRD ET AL.,
DEFENDANTS AND APPELLEES.

Appeal from the District Court of San Juan in an Action of Filiation.

No. 2327.—Decided March 7, 1922.

FILIATION — CONCUBINAGE. — The meaning of concubinage as used in subdivision 3 of section 189 of the Civil Code before it was amended in 1911 is the liv-

ing together as husband and wife without being married of the alleged father and the mother of the person claiming acknowledgment. It is not concubinage for a man to provide a woman with a house and frequently visit her, especially if he has an independent home of his own, as the evidence in this case tended to show.

ID.—AMOROUS RELATIONS.—In an action brought under section 189 of the Civil Code as it read in 1903, alleging that the supposed natural child is the offspring of amorous relations between the plaintiff and the defendant, it is necessary to prove that at the time of conception they had the intention of marrying or were engaged to be married.

ID.—ACKNOWLEDGMENT.—A request made in a will that a certain person should take care of a child is not of itself an acknowledgment of paternity within the meaning of subdivision 1 of section 189 of the Civil Code as it read in 1903, and even taken in connection with other circumstances, this request in the will is not enough to bring the case within subdivision 2 of said section 189.

The facts are stated in the opinion.

*Mr. J. Soto Rivera* for the appellant.

*Mr. M. Benítez Flores* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

María Medina, in representation of her minor son Agustín Medina, brought a suit in filiation against the Succession of Jesús Bird y Arias and others. Judgment being rendered for the defendants it is the complainant who appears as appellant in this court and assigns various errors. The first two assignments set up that the court was in error in not considering certain paragraphs of the complaint as admitted, inasmuch as they were not properly denied by the answer. The appellant may or may not be right with respect to these assignments of error, but we are not satisfied with the discussion of the same and as the appellant would still be under the necessity of proving the averments of the fourth and sixth paragraphs of the complaint, we shall only consider whether the averments of these paragraphs were sufficiently proved. The fourth, fifth and sixth paragraphs of the complaint were as follows:

"IV. That the amorous relations maintained by the plaintiff with Jesús Bird Arias, with whom she cohabited under the same roof for a number of years, resulted in the birth of Agustín Medina.

"V. That at the time of the conception and birth of Agustín Medina the plaintiff and Jesús Bird Arias were under no legal incapacity or impediment to marry, as they were both single.

"VI. That the amorous relations between the plaintiff and Jesús Bird Arias were continuous and notorious, said Jesús Bird Arias representing Agustín Medina to be his son, referring to him as such not only in private but in public, and that said minor enjoyed the uninterrupted status and right of natural son of his father, Jesús Bird Arias, by virtue of the direct acts of his father in supporting him, purchasing houses for him and in making a testamentary bequest of money to him in trust."

Escriche defines the words *concubina* (concubine), *concubinario* (paramour), and *concubinato* (concubinage) as follows: •

"*Concubine,* a mistress or a woman who lives or cohabits with some man as if he were her husband, both being single and capacitated to contract lawful marriage, although in its more extended and general significance it is applied to any woman who maintains marital relations with a man not her husband, regardless of the status of either.

"*Paramour,* a man who maintains marital relations with a woman with whom he is not united in wedlock.

"*Concubinage,* intercourse or connections of a man with his concubine."

In defining the meaning of "concubine," Escriche also says:

"Among the Romans the concubine differed but slightly from a woman lawfully married save as to her name and dignity, so that she was thus termed a woman of lesser family degree; and therefore as it was not lawful under the Roman Law to have many women at one time, the keeping of many concubines was also forbidden.

According to the *Partida* laws, an unmarried or unordained man might keep a companion, friend or mistress provided he did not keep more than one, and that one was to be kept at his home. Laws 2, Title 14, 1, Title 15, and 5, Title 19, part 4. 12 Corpus Juris, 392.

The court below found that there was no proof of con-
cubinage, and with this finding of the court we are in com-
plete accord.   There was some evidence, principally of the
complainant herself, that she had carnal relations with Jesús
Bird Arias at the time of the conception of Agustín Medina,
but there was no satisfactory proof that this man and woman
were living together in any marital sense or similarly to
husband and wife.   The concubinage to which the Civil Code
has reference relates to a state of living together similarly
to husband and wife without being actually married.   It is
not sufficient that a man installs a woman in a house and
frequently visits her, especially if he has an independent
home of his own, as the evidence tends to show.

But the complaint also speaks of the continuance of *"rela-
ciones amorosas."*   This child, Agustín Medina, was born
in May, 1903, when the following law was in force:

"Sec. 189.—A father is obliged to recognize his illegitimate child
in the following cases:

"1. Where there be an authentic statement in writing made by
him expressly recognizing its paternity.

"2. When publicly or privately he has shown that it is his child,
or has called it as such in conversation, or looks after its education
and maintenance.

"3. When the mother was known to have lived in concubinage
with the father during the pregnancy or birth of the child, or when
the child was born while his parents were engaged to be married
(*relaciones amorosas*)."

The Spanish text uses the words *"relaciones amorosas."*
Perhaps these words in their broader sense might include
mere carnal relations, but in general society these words are
held to mean a relation of lovers with marriage more or
less in anticipation.

*"Llevar relaciones amorosas"* would ordinarily carry no
improper meaning with it.   The meaning of the Legislature
is made completely clear by the English text, which trans-
lates *"relaciones amorosas"* as "engaged to be married."

There is thus no doubt as to the intention of the Legislature and there was no proof that Jesús Bird Arias and María Medina ever contemplated marriage or were engaged to be married.

With respect to the other suggestions in paragraphs 4 and 6 of the complaint, it is enough to state that there was not sufficient proof of the facts therein stated. There were, perhaps, isolated acts on the part of Jesús Bird Arias. He may have taken some interest in this child. But the court below did not find, and we can not find from the proof, that he ever publicly or privately acknowledged it as his child. The proof in this regard is too vague and as we have said in several cases the proof of filiation must be strong. *Negueruela et al.* v. *Samohano et al.,* 16 P. R. R. 658, among others.

There was some hearsay evidence that Jesús Bird Arias made a will wherein he provided that somebody else should look after this child, but the will was not produced in the record before us and apparently was not offered in evidence, nor would a request that somebody should look after a child be by itself alone a sufficient recognition to amount to the acknowledgment by will to come within the first paragraph of section 189, and this reference to the will even in connection with other circumstances is not enough to bring the case within the provisions of paragraph 2 of section 189. Perhaps if the court below had found in favor of the complainant we might possibly have thought that perhaps the proof was sufficient, but in view of the unhesitating finding of the judge as disclosed by his opinion we feel bound to affirm the judgment.

*Affirmed.*

Chief Justice Del Toro and Justice Aldrey concurred.
Mr. Justice Hutchison concurred in the judgment.